1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   DUSTIN BARTEL; et al.,                    Case Nos.:  17-CV-1671- JLS (JLB)

12                            Plaintiffs,
                                              **ORDER (1) GRANTING TEPCO'S**
13   v.                                       **MOTION TO DISMISS; (2)**
                                              **GRANTING GENERAL**
14   TOKYO ELECTRIC POWER                     **ELECTRIC'S MOTION TO DISMISS**
     COMPANY, INC.; et al.,
15
                            Defendants.
16                                            (ECF Nos. 19, 20)

17

18         Presently before the Court is Defendant Tokyo Electric Power Company, Inc.

19   ("TEPCO")'s Motion to Dismiss, ("TEPCO MTD," ECF No. 19), and Defendant General

20   Electric ("GE")'s Motion to Dismiss, ("GE MTD," ECF No. 20).  Plaintiffs have filed a

21   Response in Opposition to TEPCO's Motion, ("Opp'n to TEPCO MTD," ECF No. 31),

22   and to GE's Motion, ("Opp'n to GE MTD," ECF No. 32).  TEPCO filed a Reply, ("TEPCO

23   Reply," ECF No. 37), as did GE, ("GE Reply," ECF No. 38).  Further, TEPCO requested

24   leave to file a statement regarding choice-of-law issues, which the Court granted.  TEPCO

25   filed its statement, (ECF No. 34-1), to which Plaintiffs filed a response, (ECF No. 36).

26                                  **BACKGROUND**

27         On March 11, 2011, a 9.0 magnitude earthquake struck Japan, giving rise to tsunami

28   waves more than 40 feet high that struck Japan's Fukushima-Daiichi Nuclear Power Plant

1

("FNPP"). (TEPCO MTD 8.)[1] The plant was severely damaged and radiation was released as a result. (*Id.*) Plaintiffs are members of the U.S. Navy crews of the U.S.S. RONALD REAGAN, crews of other vessels participating in the Reagan Strike Force, land-based service personnel, and/or their dependents. ("Compl.," ECF No. 1, ¶ 4.) Plaintiffs were deployed to Japan as a part of a mission known as "Operation Tomodachi." (*Id.*) Plaintiffs allege that the FNPP released radioisotopes and exposed them to injurious levels of ionizing radiation during the mission. (*Id.*)

Plaintiffs initiated an action against TEPCO, the owner and operator of the FNPP, on December 21, 2012, in *Cooper v. TEPCO*, 12-CV-3032-JLS-WMC (hereinafter, "*Cooper*"). TEPCO moved to dismiss. The Court granted TEPCO's motion without prejudice. (*Cooper*, ECF No 46.) Plaintiffs filed an Amended Complaint, which TEPCO moved to dismiss, and the Court granted in part and denied in part this motion, again permitting Plaintiffs to file an amended complaint. (*Id.*, ECF No. 69.) Plaintiffs did so, naming GE as an additional defendant, along with three other manufacturer defendants EBASCO, Toshiba, and Hitachi. (*Id.*, ECF No. 71). TEPCO then moved for reconsideration of the Court's order regarding its second motion to dismiss. (*Id.*, ECF No. 73.) The Court amended its order and granted TEPCO's motion for certification of interlocutory appeal. (*Id.*, ECF No. 107.) Counsel for the *Cooper* plaintiffs filed the present action ("*Bartel*") against TEPCO and GE while the *Cooper* case was stayed during the appeal. (*See generally* Compl.)

The *Bartel* Complaint asserts claims for negligence, strict products liability, strict liability for ultrahazardous activities, res ipsa loquitor, negligence per se, loss of consortium, and survival and wrongful death. (*Id.*) The Complaint is filed against TEPCO as the owner and operator of the FNPP, and against GE as the designer of the Boiling Water Reactors within the FNPP. (*Id.* ¶¶ 15, 59.) Plaintiffs allege they were injured as a result of "negligently designed and maintained" Boiling Water Reactors at the FNPP. (*Id.* ¶5.)

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

17-CV-1671- JLS (JLB)

The *Bartel* plaintiffs are "members of the armed forces, their dependents, and support personnel" and claim they are "similarly situated to those Plaintiffs" named in *Cooper* and have discovered their injuries since the filing of the complaint in *Cooper*. (*Id.* ¶¶ 1–2.) Both TEPCO and GE have moved to dismiss this case against them. The Court addresses each Motion in turn.

## TEPCO'S MOTION TO DISMISS

TEPCO argues this matter should be dismissed for lack of personal jurisdiction.

## LEGAL STANDARD

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* The court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l. Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Sys., Inc. v. Jobar Int'l., Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint are taken as true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

## ANALYSIS

Plaintiff first argues TEPCO has waived the personal jurisdiction defense.

### I.   Waiver of Personal Jurisdiction

As "[t]he personal jurisdiction requirement recognizes and protects an individual liberty interest, . . . it can, like other such rights, be waived." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03 (1982). Under Rule 12(h)(1) of the Federal Rules of Civil Procedure, a defendant waives any personal jurisdiction objection by not raising it in a responsive pleading or in a motion to dismiss that precedes the pleading. *See* Fed. R. Civ. P. 12(h)(1) ("A party waives any defense listed in Rule

12(b)(2)–(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.").

Plaintiffs argue TEPCO waived the personal jurisdiction defense in *Cooper* and this waiver applies in *Bartel* because *Bartel* is an extension of *Cooper*. (Opp'n to TEPCO MTD 12.) TEPCO's response is two-fold: First, it did not waive the defense in *Cooper* because the defense was not available until the Supreme Court's June 2017 decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), and second, any waiver in *Cooper* would not extend to *Bartel*. (TEPCO Reply 6–8.) Because the issue of personal jurisdiction in *Cooper* is not before the Court in the present Motion, the Court declines to determine whether TEPCO waived personal jurisdiction in *Cooper*. The Court now determines whether any waiver in *Cooper* would extend to *Bartel*.

In *Dow Chemical Co. v. Calderon*, 422 F.3d 827, 833 (9th Cir. 2005), the Ninth Circuit held that a group of Nicaraguan defendants sued in the Central District of California did not consent to personal jurisdiction by defending on the merits an earlier action filed in the Central District and concerning the same issues. The court stated "defense on the merits in a suit brought by one party cannot constitute consent to suit as a defendant brought by different parties." *Id.* at 835. The court held a defendant does not subject itself to jurisdiction by defending itself against actions in the court and "[w]ithout an independent affirmative decision to seek relief in our courts, there can be no imputation of a conscious decision to settle all aspects of a dispute here." *Id.* at 836; *see also In re Cathode Ray Tube CRT Antitrust Litig.*, 27 F. Supp. 3d 1002, 1009 (N.D. Cal. 2014) ("[E]ven if actions are closely related—as when different plaintiffs sue the same defendant in different cases but based on the same facts—defendants do not waive their personal jurisdiction defense by raising it only in a later action, so long as the defendant is not independently seeking affirmative relief in the same court concerning the same transaction or occurrence.").

17-CV-1671- JLS (JLB)

This issue therefore becomes whether the two cases were brought by different parties. Plaintiffs argue the *Bartel* plaintiffs are "members of the putative class set forth in *Cooper* . . . and therefore are also parties to both complaints." (Opp'n to TEPCO MTD 15.) But there is no certified class in *Cooper* and the *Bartel* plaintiffs would therefore be, at most, unnamed members of an uncertified, proposed putative class. In general, "[a] 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.'" *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009). An unnamed member of a <u>certified</u> class may be "considered a 'party' for the [particular] purpos[e] of appealing" an adverse judgment. *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002). In contrast, as the dissent in *Devlin* noted, no party in that case was "willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation <u>before the class is certified</u>." *Id.* at 16 n.1. (Scalia, J., dissenting); *see Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (quoting Justice Scalia's dissent in *Devlin* to hold "'[A] nonnamed class member is [not] a party to the class-action litigation <u>before the class is certified</u>'" (alterations in original)).

Here, the *Cooper* class is not certified, so the *Bartel* plaintiffs, who are not named in the *Cooper* complaint, are not parties to the *Cooper* action. The Court concludes TEPCO did not consent to jurisdiction in *Bartel* by participating in *Cooper*. The Court therefore analyzes whether personal jurisdiction is proper in this matter.

## II.    Whether the Court Can Exercise Personal Jurisdiction Over TEPCO

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994). California's long-arm statute, California Code of Civil Procedure § 410.10, allows courts to "exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." This provision "allows courts to exercise jurisdiction to the limits of the Due Process Clause of the U.S. Constitution." *Mattel, Inc. v. Greiner & Hausser GmbH*,

354 F.3d 857, 863 (9th Cir. 2003).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). "[T]he test for personal jurisdiction requires that 'the maintenance of the suit . . . not offend traditional notions of fair play and substantial justice.'" *Ins. Corp. of Ireland*, 456 U.S. at 702–03 (quoting *Int'l Shoe*, 326 U.S. at 316 (internal quotation marks omitted)) (ellipsis in original). The required minimum contacts depend on whether Plaintiffs assert the Court has "general" or "specific" personal jurisdiction over TEPCO. General jurisdiction means that the defendant's connections with the forum are so significant that it may be "haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Specific jurisdiction requires a more focused showing that the plaintiff's claims arise from or relate to the defendant's conduct within the jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

## A. Specific Jurisdiction

There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1495 (9th Cir. 1993). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If the plaintiff meets that burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting

6

*Burger King*, 471 U.S. at 476–78.)

"Purposeful direction" and "purposeful availment" are two different concepts. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). "A purposeful availment analysis is most often used in suits sounding in contract" and "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort" and "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 802–03.

There is no contract between the Parties at issue in this matter, but both Parties make arguments regarding both the purposeful availment and the purposeful direction tests. Neither Party argues the Court should use one test or the other. Plaintiffs bring claims against TEPCO under negligence, strict liability for ultrahazardous activities, res ipsa loquitor, negligence per se, loss of consortium, and survival and wrongful death. (*See generally* Compl.) It is unclear if Plaintiffs allege any intentional torts against TEPCO,[2] and the purposeful direction test applies only to intentional torts, not negligence claims. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007); *cf Hernandez v. City of Beaumont*, No. EDCV 13-00967 DDP (DTBx), 2014 WL 6943881, at *3 (C.D. Cal. Dec. 8, 2014) (applying the purposeful availment test because the plaintiff's claims were based on negligence and products liability). A court can apply both tests when the plaintiff asserts multiple claims. *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Thus, the Court analyzes both the purposeful availment and purposeful direction tests in its personal jurisdiction analysis.

### 1. Whether TEPCO Purposefully Directed Activities Toward California

"In tort cases, [the court] typically inquire[s] whether a defendant 'purposefully

---

[2] On their Civil Cover Sheet, Plaintiffs checked the "Other Personal Injury" box in the "Torts" section when alleging the nature of their suit, and allege TEPCO engaged in "intentional and tortious conduct" in the Complaint. (ECF No. 1-1; Compl. ¶131.)

17-CV-1671- JLS (JLB)

direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803).

This test, often referred to as the "effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984). The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Calder*, 465 U.S. 783). All three parts of the test must be satisfied. *Schwarzenegger*, 374 F.3d at 805.

First, Plaintiffs allege TEPCO committed intentional acts. Plaintiffs allege "TEPCO intentionally lied about the radiation, knowing that United States vessels were on their way to the Fukushima prefecture . . . [and] intentionally dumped" radioactive water into the ocean, knowing U.S. Navy ships were in nearby waters. (Opp'n to TEPCO MTD 27; Compl. ¶ 187.)[3] Thus, the Court finds the first prong of the test is satisfied.

The Court next determines whether TEPCO expressly aimed its actions at California. The Ninth Circuit has held that express aiming "encompasses wrongful conduct individually targeting a known forum resident." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Plaintiffs argue TEPCO's acts were "clearly directed at [the] United States Naval ships coming from California." (Opp'n to TEPCO MTD 23.) And, Plaintiffs allege, to determine the jurisdiction of vessels, courts look to the home port of the vessel and the home port of the U.S.S. Ronald Reagan was San Diego,

---

[3] Plaintiffs also argue TEPCO "'purposefully directed' its grossly negligent activity at the State of California." (Opp'n to TEPCO MTD 21.) The Court does not consider the allegations of negligence in its purposeful direction analysis. "Allegations of negligence negate the 'express aiming' analysis which requires 'the defendant . . . to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Acosta v. Tundra Strategies, Inc.*, No. CV12-5903 CBM (SHX), 2013 WL 12134184, at *3 (C.D. Cal. Mar. 25, 2013) (quoting *Wash. Shoe Co v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675 (9th Cir. 2012).)

17-CV-1671- JLS (JLB)

California. (*Id.* at 22.) The Court finds Plaintiffs have failed to establish how TEPCO's acts were directed at California. There is no targeting here. Plaintiffs' allegations that the effects of TEPCO's conduct were felt by American citizens while on U.S. ships, one of which with a home port of San Diego, are too attenuated to establish purposeful direction. *See Walden*, 134 S. Ct. at 1126 (holding where the defendant's conduct occurred entirely outside the forum state, "the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction"). Because Plaintiffs have failed to satisfy their burden of proof with respect to the second part of the *Calder* effects test, the Court need not reach the third part of the test. *See Schwarzenegger*, 374 F.3d at n.1 (holding the same). But, the Court finds Plaintiffs cannot satisfy the third part of the test nonetheless. Plaintiffs have provided no information to support an assertion that TEPCO <u>knew</u> its actions would cause harm likely to be suffered in California. Plaintiffs assert that TEPCO directed its actions at U.S. ships coming from California. (Opp'n to TEPCO MTD 21–22.) Plaintiffs also argue it is "foreseeable" that the incident at the FNPP would draw aid from the United States. (*Id.* at 28 n.4.) But there is no information TEPCO knew of the home port of any of the ships at the FNPP or the residency of those on the ships. Foreseeability is not knowledge, and Plaintiffs' allegations are insufficient to show TEPCO's knowledge that harm would likely be suffered in California. *See Acosta*, 2013 WL 12134184, at *3 (in analyzing personal jurisdiction over a Canadian corporation for an incident that occurred in Afghanistan, the court rejected the military plaintiffs' assertion that the defendants "could have foreseen the harmful effects of their actions (or nonactions) in California because Californians serve in the military"); *Bancroft & Masters, Inc.*, 223 F.3d at 1087 (foreign act with foreseeable effects in the forum state cannot give rise to personal jurisdiction).

Because Plaintiffs cannot satisfy all elements of the effects test, the Court finds Plaintiffs are unable to show TEPCO purposefully directed its activities at California.

/ / /

17-CV-1671- JLS (JLB)

## 2. Whether TEPCO Purposefully Availed Itself of the Privilege of Conducting Activities in California

The Court next analyzes the purposeful availment prong as it relates to Plaintiffs' negligence allegations. A defendant purposefully avails itself of a forum state when that defendant "perform[s] some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sinatra v. Nat'l. Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). The defendant "submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (internal citations omitted).

Plaintiffs allege TEPCO availed itself of California because it registered to do business in California in 2003. (Opp'n to TEPCO MTD 23.) In its Statement of Designation filed in 2003, TEPCO stated its business purposes were, among others, the "business of supply of electricity[,]" the "manufacture and sale of electronic apparatus and machines[,]" and the "development, exploitation processing, purchase and sale, and transport of energy resources." (ECF No. 31-5, at 4.) Plaintiffs do not contest TEPCO surrendered its business license in 2006. (Opp'n to TEPCO MTD 24.)[4]

The Court finds TEPCO's three-year incorporation in California from 2003 to 2006 is contact with the state which promotes business within the state. This contact is sufficient to meet the purposeful availment requirement. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (the "purposeful availment" requirement is satisfied if the defendant "has taken deliberate action within the forum state or if he has created continuing obligations to

---

[4] Further, Plaintiffs allege TEPCO partnered with Energy Impact Partners, a California-based private equity firm in 2017, and partnered with Energy Excelerator, a Hawaii and Palo Alto-based nonprofit company in 2016. (Opp'n to TEPCO MTD 24–25.) "Only contacts occurring prior to the event causing the litigation may be considered" in evaluating the defendant's contacts with the state. *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990). The incident occurred in March 2011; thus, TEPCO's partnerships in 2016 and 2017 have no bearing on the personal jurisdiction issue here.

17-CV-1671- JLS (JLB)

forum residents"). Thus, the Court continues on to the next prong of the specific personal jurisdiction test to determine whether the contacts are related to Plaintiffs' claims.

### 3. *Whether Plaintiffs' Cause of Action Arises Out of or Results From TEPCO's Forum-Related Contacts*

The Ninth Circuit follows a "but for" test in determining whether the claim "arises out of" the nonresident's forum-related activities, i.e., if plaintiff would not have suffered loss "but for" defendant's activities, this element is satisfied. *Ballard*, 65 F.3d at 1500. Plaintiffs' negligence claims are based on inadequate maintenance, operation, and control of the FNPP. (*See e.g.*, Compl. ¶ 6.) Plaintiffs allege "during the period that TEPCO did business in California, it was negligent in maintaining, operating, repairing and inspecting the [FNPP]." (Opp'n to TEPCO MTD 24.) Plaintiffs fail to demonstrate how their negligence allegations are tied to TEPCO's activities in the forum state. Even assuming TEPCO's negligence was the cause of the incident, as Plaintiffs allege, the "but for" test is not satisfied. But for TEPCO's activities in California that ended five years before the incident, would Plaintiffs have suffered their alleged injuries after being deployed to Japan? If TEPCO had not done any business in California, would the FNPP have released radiation after being struck by the tsunami? Plaintiffs have not demonstrated that the answer to these questions is yes, thus, the Court finds Plaintiffs have failed to satisfy this element of specific jurisdiction.

Because Plaintiffs are unable to prove the first two elements of the specific personal jurisdiction test, the Court need not proceed to the third element. The Court finds California does not have specific personal jurisdiction over TEPCO.

### B. *General Jurisdiction*

Plaintiffs do not argue TEPCO is subject to general jurisdiction in California, but instead assert TEPCO is subject to general jurisdiction in Washington, D.C. and the Court should transfer the case there. (Opp'n to TEPCO MTD 25.) TEPCO disagrees it is subject to general jurisdiction in D.C. and does not address Plaintiffs' request to transfer. (TEPCO MTD 12.)

Though not specified, it appears Plaintiffs request this Court transfer this case to D.C. under 28 U.S.C. § 1404. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "A transfer of venue pursuant to § 1404(a) may be made by motion of either party or by the court sua sponte, so long as the parties are first given the opportunity to present their views on the issue." *Pavao v. Unifund CCR Partners*, 934 F. Supp. 2d 1238, 1242 (S.D. Cal. 2013) (citing *Costlow v. Weeks*, 790 F.2d 1486, 1588 (9th Cir. 1986).) There is no motion to transfer here by either Party, only a request in Plaintiffs' Opposition. Further, the Court declines to sua sponte analyze whether transfer to D.C. is appropriate because both Parties have not expressed their views on the issue. (*See* Opp'n to TEPCO MTD 26 (Plaintiffs noting TEPCO "has made no motion for transfer, so it remains unclear whether it would prefer to litigate this case in its home state of the District of Columbia rather than here in San Diego").) Accordingly, the Court does not analyze whether general jurisdiction is proper in D.C. at this time.

### C. *Jurisdiction Pursuant to Rule 4(k)(2)*

The final personal jurisdiction analysis involves Federal Rule of Civil Procedure 4(k)(2). This Rule is often referred to as the federal long-arm statute. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Rule 4(k)(2) imposes three requirements: "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Id.* at 1159 (citations omitted). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, [the court] consider[s] contacts with the nation as a whole." *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

17-CV-1671- JLS (JLB)

As to the first prong, Plaintiffs state their claims are grounded in federal law. (Opp'n to TEPCO MTD 26.) However, in their Complaint, Plaintiffs assert subject matter jurisdiction in this matter is appropriate due to diversity jurisdiction under 28 U.S.C. § 1332. (Compl. ¶ 3.) The Advisory Committee notes to Rule 4(k)(2) state:

> This narrow extension of the federal reach applies only if a claim is made against the defendant under federal law. It does not establish personal jurisdiction if the only claims are those arising under state law or the law of another country, even though there might be diversity or alienage subject matter jurisdiction as to such claims.

Fed. R. Civ. P 4(k)(2) advisory committee's note to 1993 amendment; *see Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 680 (D. Del. 2014) (holding Rule 4(k)(2) is only applicable if the case "arises under federal law, and is not pending before the court pursuant to the court's diversity jurisdiction"); *United States v. Int'l Bhd. Of Teamsters*, 945 F. Supp. 609, 617 (S.D.N.Y. 1996) (same).

Because Plaintiffs have alleged only state law claims and this case is pending before the Court under diversity jurisdiction, the Court finds Plaintiffs' claims do not "arise" under federal law. The Court need not reach the other requirements of the test. Personal jurisdiction over TEPCO pursuant to Rule 4(k)(2) is not proper.

## CONCLUSION

In sum, this Court finds there is no specific personal jurisdiction over TEPCO in California, and Plaintiffs have not alleged there is general jurisdiction over TEPCO in California. Further, personal jurisdiction pursuant to Rule 4(k)(2) is not proper. Thus, the Court **GRANTS** TEPCO's Motion to Dismiss and Plaintiffs' case against TEPCO is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.[5]

/ / /

---

[5] Plaintiffs argue TEPCO's Motion to Dismiss for lack of personal jurisdiction is "an exercise in futility because Plaintiffs will amend the *Cooper* complaint to include these [*Bartel*] Plaintiffs." (Opp'n to TEPCO MTD 18.) Although it may be true that dismissing this action against TEPCO will complicate the two cases, this has no bearing on the issue of whether personal jurisdiction is proper.

17-CV-1671- JLS (JLB)

**GE'S MOTION TO DISMISS**

GE is included as a defendant in this case because Plaintiffs allege GE "negligently and defectively designed, engineered and constructed the Mark 1 Boiling Water Reactors ("BWRs") creating several manufacturing and design defects." (Opp'n to GE MTD 9 (citing Compl. ¶ 60).) Plaintiffs allege three BWRs melted down after the tsunami due to design and manufacturing defects. (Compl. ¶ 37.)

**ANALYSIS**

## I.   Subject Matter Jurisdiction

GE primarily argues choice-of-law issues in its brief, but also argues there is no subject matter jurisdiction in this case because Plaintiffs fail to allege complete diversity. (GE MTD 46.) Because a federal court "may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999), the Court first analyzes whether it has jurisdiction over this action.

GE argues Plaintiffs have not specified the citizenship of the Plaintiffs. (GE MTD 46.) The United States Supreme Court has "consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2617 (2005) (citations omitted). Besides alleging Plaintiff Bartel is a resident of San Diego, (*see* ECF No. 1-1), Plaintiffs have provided no information in the Complaint about the citizenship of the other Plaintiffs. Plaintiffs allege GE has its principal place of business and headquarters in Connecticut. (Compl. ¶ 9.) Without knowing the citizenship of all Plaintiffs, the Court finds a lack of

/ / /

/ / /

/ / /

complete diversity. The Court **GRANTS** GE's Motion to Dismiss for lack of subject matter jurisdiction and **DISMISSES** this case against GE **WITHOUT PREJUDICE.**

   **IT IS SO ORDERED.**

Dated:  January 5, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge